# EXHIBIT 1

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**

| | |
|---|---|
| JOHN VERSTRAETE, JULIE MURPHY, TERESA BLY, AND ERIC SATRE on behalf of themselves and all other persons similarly-situated | Civil Other/Misc. |
| | Case No. |
| Plaintiffs, | Judge: |
| v. | |
| | **CLASS ACTION COMPLAINT** |
| GOPHER RESOURCE, LLC, ECP GOPHER HOLDINGS, LP, and ENERGY CAPITAL PARTNERS MANAGEMENT, LP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY

COME NOW, Plaintiffs, JOHN VERSTRAETE; JULIE MURPHY; TERESA BLY; AND ERIC SATRE ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, hereby file this Class Action Complaint against Defendants, GOPHER RESOURCE, LLC; ECP GOPHER HOLDINGS, LP; and ENERGY CAPITAL PARTNERS MANAGEMENT, LP (collectively "Defendants"), and allege, upon information and belief, as follows:

### INTRODUCTION[1]

1.      This is a class action brought on behalf of all persons residing in the surrounding communities near the Gopher Resource secondary lead smelting facility located at 685 Yankee

---

[1] This Complaint is intended to allege Defendants' acts, omissions, and conduct occurring after the conclusion of the settlement period covered by the Class Action Settlement Agreement and Release entered in *Brown, et al. v. Gopher Resource, LLC, et al.*, Case No. 2021-CA-004494 (13th Judicial Circuit, Hillsborough County, Fla.), which received Preliminary Approval on July 24, 2024 (the "*Brown* Settlement"). Plaintiffs do not seek to relitigate, and expressly disclaims any intent to assert, any claims released by the *Brown* Settlement or any claims arising from conduct

Doodle Road, Eagan, Minnesota 55121 ("Eagan Facility"), for the foreseeable invasion of hazardous substances, including lead, cadmium, arsenic, dioxins, and sulfur dioxide, and hazardous property contamination caused by the reckless release and dissemination of hazardous substances from Defendants' Eagan Facility. Plaintiff brings this action individually and on behalf of all similarly situated persons who have had their properties contaminated with hazardous substances, and, as a result, have suffered and continue to suffer property damages due to Defendants' deliberate, intentional, negligent and/or reckless operation of their Eagan Facility.

2.     Defendants, despite knowing that residents in the vicinity of the Eagan Facility were being exposed to dangerously exceeding levels of lead, cadmium, arsenic, dioxins and sulfur dioxide emitted from the Eagan Facility, failed to take effective measures to prevent emissions, transmission, dissemination, discharge, release, and/or escape of fugitive hazardous substances from the Facility into the surrounding residential community, which contaminated Plaintiffs' and Class Members' homes and personal property. As a result of this contamination, Plaintiffs and Class Members have suffered property damage.

3.     Defendants, knowing the risks of harm to the surrounding community, did not take the required protective measures to minimize such risks in order to avoid any harm to Plaintiffs' and Class Members' property. As a result, Plaintiffs' and Class Members' property were exposed and contaminated with high levels of hazardous substances causing property damage.

4.     Defendants exacerbated hazardous substance exposure and contamination by concealing and misrepresenting its scope, failing to take effective protective measures to protect

---

occurring on or before the Preliminary Approval Date in *Brown*. To the extent this Complaint references Defendants' acts, omissions, conduct, knowledge, or course of dealing predating the Preliminary Approval Date in *Brown*, such references are made solely for the purpose of providing factual context, establishing Defendants' actual or constructive knowledge of the hazards alleged herein, demonstrating Defendants' continuing course of conduct, and supporting Plaintiffs' proffer for punitive damages, and not for the purpose of asserting any released claim.

2

and prevent exposure and contamination to Plaintiffs' property, as well as failing to take remedial action to eliminate it.

5.      This action is brought against Defendants that were well aware of the risks and effects from exposure to hazardous substances, including but not limited to, lead, cadmium, arsenic, dioxins and sulfur dioxide, and which, deriving a direct financial benefit from operating the Eagan Facility in Plaintiffs' and Class Members' community, intentionally failed to prevent hazardous substance contamination to Plaintiffs' property.

## PARTIES

### A. Class Representative

6.      At all relevant times hereto, Plaintiffs lived in close proximity to the Eagan Facility, and were exposed to lead, lead dust, lead compunds, molten lead, lead-containing products, cadmium, arsenic, and sulfur dioxide as a result of living in proximity to the Eagan Facility. All class representatives still reside in close proximity to the Eagan Facility and were all living in their respective residences since at least July 24, 2024. As a result of this exposure, Plaintiffs have suffered property damage.

### B. The Proposed Class

7.      Plaintiffs brings this action on behalf of themselves and all other similarly situated individuals pursuant to Rule 23 of the Minnesota Rules of Civil Procedure. The proposed Class is defined as follows:

**Class Definition:** All individuals who reside within one (1) mile of the Gopher Resource facility located at 685 Yankee Doddle Road, Eagan, Minnesota 55121 since July 24, 2024 and as a result of such residence has suffered property damage due to contamination of hazardous substances including lead, cadmium, arsenic, sulfur dioxide, and/or dioxins released from the Eagan Facility.

3

8.    Excluded from the Class are Defendants, their officers, directors, employees, agents, affiliates, and subsidiaries; any judicial officer assigned to this case and members of their immediate families; and Defense Counsel.

## C. Defendants

9.    Defendant **Gopher Resource, LLC** is a limited liability company organized and existing under the laws of the State of Minnesota, with its principal place of business located at 2900 Lone Oak Parkway, Suite 140A, Eagan, MN 55121. Separate Defendant Gopher Resource, LLC was and remains an entity engaged in secondary lead smelting which includes the recycling of lead acid batteries into lead or lead alloys and other recycling activities that cause the release and discharge of Hazardous Substances from its facilities, including the facility located at 685 Yankee Doodle Road, Eagan, Minnesota 55121.

10.    Defendant **ECP Gopher Holdings, LP** is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of New Jersey. Separate Defendant ECP Gopher Holdings, LP was and remains an entity engaged in secondary lead smelting which includes the recycling of lead acid batteries into lead or lead alloys and other recycling activities that cause the release and discharge of Hazardous Substances from its facilities, including the facility located at 685 Yankee Doodle Road, Eagan, Minnesota 55121. Separate Defendant ECP Gopher Holdings, LP acquired Defendant Gopher Resource, LLC in 2018, and maintains a supervisory and/or managerial role over Gopher Resource's operations of the Eagan Facility.

11.    Defendant **Energy Capital Partners Management, LP**, is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of New Jersey. Separate Defendant Energy Capital Partners Management, LP,

4

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM

was and remains an entity engaged in secondary lead smelting which includes the recycling of lead acid batteries into lead or lead alloys and other recycling activities that cause the release and discharge of Hazardous Substances from its facilities, including the facility located at 685 Yankee Doodle Road, Eagan, Minnesota 55121. Separate Defendant Energy Capital Partners Management, LP acquired Defendant Gopher Resource, LLC in 2018, and maintains a supervisory and/or managerial role over Gopher Resource's operations of the Eagan Facility.

12.   At all times material hereto, Defendants owned, operated, managed and/or controlled, the Gopher Resource facility in Dakota County, Minnesota located at 685 Yankee Doodle Road, Eagan, Minnesota 55121 and are therefore directly liable for all the operations at Gopher Resource. The actions of each of Gopher Resource's servants, agents and employees as set forth herein, are imputed to Gopher Resource, LLC, ECP Gopher Holdings, LP, and Energy Capital Partners Management, LP.

13.   Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

14.   Whenever the term "Eagan Facility" is utilized within this suit, such term refers to the facility and plant operations located at 685 Yankee Doodle Road, Eagan, Minnesota 55121.

15.   Separate Defendants Gopher Resource, LLC, ECP Gopher Holdings, LP, and Energy Capital Partners Management, LP, own, operate, manage, and/or control recycling operations around the country including, but not limited to the Eagan Facility. All Defendants have regular and continuous business in Minnesota. Defendants were, and remain, owners and/or managers of a facility which is advertised, offered, maintained, or operated for the express or implied purpose of recycling hazardous substances with a focus on recycling automotive batteries.

5

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM

## JURISDICTION AND VENUE

16.     Minn. Stat. § 484.01(1) provides that the district courts shall have original jurisdiction over all civil actions within their respective districts.

17.     Venue in this Court is proper pursuant to Minn. Stat. § 542.09, which provides that "[a]ll actions not enumerated in sections 542.02 to 542.08 and 542.095 shall be tried in a county in which one or more of the defendants reside when the action is begun or in which the cause of action or some part thereof arose." For purposes of this statute, "[a] corporation … shall be considered as residing in any county wherein it has an office, resident agent, or business place." Minn. Stat. § 542.09.

18.     Defendant Gopher Resource, LLC's resident agent is Cogency Global, Inc., whose address is 6160 Summit Drive North, Suite 205, Brooklyn Center, MN 55430, located in Hennepin County. Venue is therefore proper in this Court.

19.     Accrual of this cause of action is governed by 42 U.S.C. § 9658.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

20.     Defendants own and operate a spent lead-acid battery recycling facility located at 685 Yankee Doodle Road, Eagan, Minnesota, across the road from a densely populated residential community. According to the United States Census Bureau, Eagan's population was 68,855 at the 2020 census.[2]

---

[2] United States Census Bureau. Retrieved on April 6, 2026 from:
https://data.census.gov/profile/Eagan_city,_Minnesota?g=160XX00US2717288

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM



Retrieved from Google Maps on April 8, 2026.



Retrieved from Google Maps on April 8, 2026.

21.    The Eagan Facility processes large volumes of lead-acid batteries through crushing, separation, smelting, refining, and casting operations that generate hazardous substances, including lead, cadmium, arsenic, sulfur dioxide, and/or dioxins.

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM

22.    Due to their nature, these operations present a foreseeable risk of environmental contamination if not strictly controlled through engineering, emission controls, maintenance, and operational safeguards.

23.    Due to the dangerous nature of the Defendants' operations, the Defendants are subjected to strict permitting requirements that they must comply with. These regulations are designed to keep the surrounding communities safe.

24.    Defendants released, emitted, discharged, and allowed the escape of hazardous substances including, but not limited to, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide from the Eagan Facility into the surrounding residential communities.

25.    The hazardous substances released from the Eagan Facility migrated through fugitive dust, air emissions, surface deposition, water irrigation, and resuspension, reaching and settling onto neighboring properties including Plaintiffs' and Class Members' properties.

26.    The hazardous substances released from the Eagan Facility contaminated soil, outdoor spaces, exterior surfaces, and other

27.    Defendants knew, or should have known, that hazardous substances including lead compounds, cadmium, arsenic, dioxins and sulfur dioxide, released from the Eagan Facility would travel beyond the facility boundary near residential properties.

28.    Defendants knew, or should have known, that hazardous substances including lead compounds, cadmium, arsenic, dioxins and sulfur dioxide, released from the Eagan Facility would travel beyond the facility boundary and contaminate the properties of Plaintiffs and Class Members.

29. Defendants failed to efficiently operate and maintain their Eagan Facility resulting in the release and dispersion of hazardous fugitive emissions which migrated onto the surrounding communities contaminating the homes of Plaintiffs and Class Members.

30. Defendants failed to timely and adequately investigate, disclose, remediate and/or clean up hazardous substances' contamination on neighboring properties.

31. Furthermore, even after July 24, 2024, Defendants failed to fully remediate contamination affecting residential properties within one mile of the Eagan Facility.

32. This action arises from Defendants operating the lead-smelting Eagan Facility in a way that caused contamination of properties in the surrounding community by releasing hazardous substances including lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide, foreseeably resulting in property damage.

33. Defendants discharged dangerously high levels of lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide, in and throughout Plaintiffs' and the Class Members' community, to which they were exposed and which invaded and settled in their respective homes, personal property and surrounding terrain.

**Hazardous Substance Contamination Caused by Defendants**

34. The smelting process of recycling lead acid batteries involves the reduction of lead-bearing scrap into metallic in a furnace. The smelting process presents a pathway of exposure to lead from emissions. The lead particles and fumes emitted into the air can be inhaled and deposited onto the soil. To avoid lead poisoning and minimize lead exposure, industries, such as Defendants', have to take effective measures to avoid lead exposure outside and inside their facilities, such as effective emission control systems, cleaning procedures, hygiene practices, among other measures.

9

35.    Defendants' smelting process of recycled lead acid batteries involves the reduction of lead-bearing scrap into metallic lead in a furnace. Defendants' smelting process presents a pathway of exposure to lead, cadmium, arsenic, dioxins and sulfur dioxide emissions. The lead, cadmium, arsenic, dioxins and/or sulfur dioxide particles and fumes emitted into the air were deposited into the soil, water, and on Plaintiffs' residence and personal property. To avoid lead, lead compounds, cadmium, arsenic, dioxins and/or sulfur dioxide poisoning and minimize exposure to such substances, federal statutes and regulations required Defendants to take effective measures to protect against such exposure outside their facilities, which Defendants failed to do so.

36.    Defendants serve clients such as the U.S. Military, battery makers, and ammunition suppliers, generating annual revenues in the hundreds of millions of dollars.

37.    Defendants attempted, ineffectually, to control the spread of lead dust, other lead compounds, cadmium, arsenic, dioxins and sulfur dioxide discharged from the Eagan Facility using water sprayed in and around the exterior of the facility. The water mixed with lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide and was discharged by the Defendants, and rather than being properly diverted into water treatment systems, the contaminated water was allowed to pool in areas in and around the Eagan Facility.

38.    Defendants' exterior dust control system was also ineffective and allowed dangerous amounts of lead dust, cadmium, arsenic, and sulfur dioxide to remain in the air surrounding the Eagan Facility, causing Plaintiffs and Class Members to be exposed to hazardous substances and suffer property damage.

39.    Defendants were well aware of the hazards and risks posed by lead, lead compounds, cadmium, arsenic, dioxins and/or sulfur dioxide contamination. Defendants knew that

10

lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide were emitted from the Eagan Facility into the surrounding areas, and thereby contaminated Plaintiffs' residence with lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide. Defendants knew lead, lead compounds, cadmium, arsenic, dioxins or sulfur dioxide would be emitted from the Eagan Facility into the surrounding community and would contaminate Plaintiffs' property, yet Defendants did not implement measures to prevent such dispersion of lead, lead compounds, cadmium, arsenic, dioxins or sulfur dioxide from their Eagan Facility.

40.     The property damage suffered by Plaintiffs is a direct and proximate result of exposure to excessive levels of lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide due to Defendants' deliberate and intentional failure to implement adequate engineering and work practice controls to prevent dissemination and discharge of lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide from the Eagan Facility; failure to prevent lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide from disseminating and discharging outside the Eagan Facility; failure to implement, maintain and/or correctly operate their emission control systems; and failure to prevent drag-out of lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide from disseminating, discharging, and escaping from the Eagan Facility to the community at large.

41.     According to the Minnesota Pollution Control Agency (MPCA) shortly after the MPCA began monitoring the ambient air near the Eagan Facility in 2006, Defendants' Eagan Facility was found to be exceeding federal air quality standards for lead.[3]

---

[3] Minnesota Pollution Control Agency. Retrieved on April 9, 2026 from: https://www.pca.state.mn.us/local-sites-and-projects/eagan-gopher-resource#:~:text=From%20January%20through%20March%202025,of%20the%20Gopher%20Resource

11

42.    Since then, Defendants' Eagan Facility has released lead into the ambient air in Eagan on multiple occasions.[4]

43.    Approximately five weeks later, additional lead toxic substances were released into the community's ambient air.[5]

44.    According to the MPCA, on multiple occasions that spanned over two years, the Defendants "failed to operate and maintain [one of their regulated emissions units]" to prevent excess emissions, which led to 0.353 µg/m3 of lead toxic substances to be released into the Eagan community's ambient air.[6] Due to that failure to maintain and operate their emissions units, on June 16, 2022, additional lead toxic substances were released into the community's ambient air.

45.    Toxic lead substance emissions into the Eagan community's ambient air continued on June 29, 2023, when the Defendants' Eagan Facility released 0.65 µg/m3 into the air.[7]

46.    An additional 1.038 µg/m3 of toxic lead substances were released into the Eagan community's ambient air on July 17, 2023.[8]

47.    In October of 2022, additional lead toxic substances were released into the community's ambient air.[9]

48.    The October 22, 2022, incident was quickly followed by an additional incident of toxic lead being released into Eagan's ambient air, just six days later.[10]

---

[4] United States Environmental Protection Agency. Retrieved on April 9, 2026 from:
https://yosemite.epa.gov/oa/rhc/epaadmin.nsf/Filings/7DCBA3DD9058767985257B82001BCB27?OpenDocument
[5] Id.
[6] Administrative Penalty Order, Minnesota Pollution Control Agency, December 2, 2024. Retrieved from:
https://webapp.pca.state.mn.us/wimn/site/1836/documents
[7] Id.
[8] Id.
[9] United States Environmental Protection Agency. Retrieved on April 10, 2026 from:
https://yosemite.epa.gov/oa/rhc/epaadmin.nsf/Filings/51DA733612F7127985258A75007EF836?OpenDocument
[10] Id.

12

49.    For three consecutive months in 2025, Defendants' Eagan Facility released additional lead toxic substances into the Eagan community's ambient air, triggering an investigation and enforcement action by the MPCA.[11]

50.    Defendants' egregious release of toxic substances into the surrounding Eagan, MN community has been widely publicized in the media. There have been numerous news articles online since Defendants' most recent conduct was discovered:

    a.  *Gopher Resource has history of air permit violations*, KSTP 5 Eyewitness News, July 17, 2025. Retrieved from:
https://www.youtube.com/watch?v=ZwKJo0Vt3pA

    b.  *Neighbors raise concerns about past violations at Gopher Resource*, KSTP 5 Eyewitness News, July 11, 2025. Retrieved from:
https://www.youtube.com/watch?v=HB94xJNUI3M

    c.  *Neighbors raise concerns about past violations at Gopher Resource*, KSTP 5 Eyewitness News, July 11, 2025. Retrieved from:
https://www.fox9.com/news/gopher-resource-pollution-eagan-investigation-mpca-response

    d.  *Eagan residents voice frustrations over Gopher Resource pollution, delayed notification*, CBS News, August 14, 2025. Retrieved from:
https://www.cbsnews.com/minnesota/news/eagan-community-meeting-gopher-resource-pollution/

    e.  *Eagan residents express concern over elevated lead levels, timeline of events*, Twin Cities Pioneer Press, July 30, 2025. Retrieved from:
https://www.twincities.com/2025/07/30/gopher-resource-eagan-lead-levels/

    f.  *Residents of Twin Cities suburb demanding answers about lead emissions increase*, WCCO CBS Minnesota, July 22, 2025. Retrieved from:
https://www.youtube.com/watch?v=iAA-uxjeRAo

    g.  *'I'm angry every day': Neighbor describes life next to an Eagan car battery recycling plant*, Minneapolis Star Tribune, August 6, 2025. Retrieved from:
https://www.startribune.com/im-angry-every-day-neighbor-describes-life-next-to-an-eagan-car-battery-recycling-plant/601444923

---

[11] Minnesota Pollution Control Agency. Retrieved on April 8, 2026 from: https://www.pca.state.mn.us/local-sites-and-projects/eagan-gopher-resource#:~:text=From%20January%20through%20March%202025,of%20the%20Gopher%20Resource

13

h. *Unacceptable lead levels in Eagan air went undetected for 3 months, MPCA warns*, Bring Me The News, July 11, 2025: Retrieved from: https://bringmethenews.com/minnesota-news/unacceptable-lead-levels-in-eagan-air-went-undetected-for-3-months-mpca-warns

i. *Eagan residents ask for answers at community meeting over Gopher Resource pollution*, CBS News, August 14, 2025. Retrieved from: https://www.cbsnews.com/minnesota/video/eagan-residents-ask-for-answers-at-community-meeting-over-gopher-resource-pollution/

j. *MPCA, Eagan eye lead emissions from Gopher Resource*, Sun This Week, August 7, 2025. Retrieved from: https://www.hometownsource.com/sun_thisweek/community/eagan/mpca-eagan-eye-lead-emissions-from-gopher-resource/article_30022245-13a1-4687-95e7-b558f95d7ac0.html

k. *MDH shares behind-the-scenes look at soil testing after exposure near Gopher Resource*, KSTP 5 Eyewitness News, July 31, 2025. Retrieved from: https://www.youtube.com/watch?v=Kc_2CelgR-0

l. *Neighbors of an Eagan battery recycling plant had controversial bone scans to detect lead poisoning*, The Minnesota Star Tribune, September 7, 2025. Retrieved from: https://www.startribune.com/neighbors-of-an-eagan-battery-recycling-plant-had-controversial-bone-scans-to-detect-lead-poisoning/601466295

m. *MPCA didn't need to delay lead exposure notification in Eagan, EPA says*, August 6, 2025. Retrieved from: https://www.cbsnews.com/minnesota/video/mpca-didnt-need-to-delay-lead-exposure-notification-in-eagan-epa-says/

n. *Communities impacted by polluters offer support to Eagan Neighbors for Clean Air*, CBS News, January 6, 2026, Retrieved from: https://www.cbsnews.com/minnesota/news/eagan-neighbors-for-clean-air-gopher-resource/

51.    Defendants breached their duty by allowing high levels of heavy metals including, but not limited to, cadmium, lead, lead compounds, dioxins and inorganic arsenic, to exit the Eagan Facility, expose and contaminate Plaintiffs' residences, due to Defendants' intentional failure to implement and exercise required preventive measures.

52.    Despite Defendants' awareness of the serious danger posed on the Plaintiffs' and the Class Members' properties, Defendants failed to take adequate steps and implement effective

14

measures to control its emissions and prevent dissemination of hazardous substances including lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide into the surrounding residential community.

53. Defendants prioritized profit-making and continued operations over safety, and failed to operate the Eagan Facility in a manner that would not contaminate the surrounding properties.

54. Defendants knowingly, recklessly, negligently, intentionally, and grossly failed to properly maintain and operate the Eagan Facility, resulting in the invasion of Plaintiffs' and Class Members' properties by hazardous substances.

## CLASS REPRESENTATION ALLEGATIONS

55. Plaintiffs bring this action individually and on behalf of all persons similarly situated as the Court may determine to be appropriate for class certification, pursuant to Rule 23 of the Minnesota Rules of Civil Procedure.

56. The proposed Class is defined as follows:

**Class Definition:** All individuals who reside within one (1) mile of the Gopher Resource facility located at 685 Yankee Doddle Road, Eagan, Minnesota 55121 since July 24, 2024 and as a result of such residence has suffered, and continues to suffer, property damage due to contamination of hazardous substances including lead, cadmium, arsenic, sulfur dioxide, and/or dioxins released from the Eagan Facility, and failure from Defendants to remediate such contamination. ("Class Area")

57. Excluded from the Class are Defendants, their officers, directors, employees, agents, affiliates, and subsidiaries; any judicial officer assigned to this case and members of their immediate families; and Defense Counsel.

58. Each of the following elements independently supports the maintenance of this action as a class action.

### A. Numerosity

15

59.    The members of the Class are so numerous that joinder of all members is impracticable.

60.    The hazardous substances released from Defendants' Eagan Facility dispersed throughout the surrounding residential communities over an extended period of time, contaminating soil, structures, and other property components across an extensive geographic area. Upon information and relief, there are hundreds of residential properties within the Class Area. The precise number of Class Members is not currently known to Plaintiffs but can be determined through discovery.

61.    The geographic concentration of Class Members in Eagan, MN, while rendering individual joinder feasible in principle, does not make it practical given the number of Class Members.

### B.  Commonality

62.    There are questions of law and fact common to the Class that predominate over questions, if any, affecting individual class members, including but not limited to the following common questions:

    a.  Whether and how Defendants negligently, recklessly, knowingly, intentionally, and grossly emitted, released and/or allowed the release of hazardous substances including but not limited to, lead, cadmium, arsenic, dioxins and sulfur dioxide;

    b.  Whether Defendants have taken or not steps to control the hazardous fugitive emissions into neighboring properties through the operation and maintenance of its Eagan Facility;

    c.  Whether Defendants operated the Eagan Facility in a manner that caused hazardous substances including lead, cadmium, arsenic, sulfur dioxide, and dioxins to be

16

released and dispersed out of the facility migrating into the surrounding communities;

d. Whether Defendants met their standard of care with respect to the operation and maintenance of the Eagan Facility;

e. Whether it was reasonably foreseeable that Defendants' failure to properly operate and maintain the Eagan Facility and its operations would result in an invasion of Plaintiffs and Class Members' property interest;

f. Whether Defendants knew or should have known that its operations would result in contamination of neighboring properties;

g. Whether Defendants failed to implement adequate emission controls, pollution prevention measures, or remediation practices;

h. Whether Defendants owed any duties to Plaintiffs and Class Members;

i. Whether Defendants' conduct constitutes negligence under Minnesota law;

j. Whether Defendants are liable for property damage resulting from the contamination caused by the release of hazardous substances from the Eagan Facility; and

k. Whether Class Members are entitled to compensatory damages, including remediation costs, loss of use and enjoyment, and diminution in property value, and if so, the measure of such damages;

l. Whether Defendants' conduct warrants punitive damages.

63. Each of the foregoing common questions arise from Defendants' uniform conduct in operating the Eagan Facility. The answers to these questions will apply equally to all Class Members and will drive the resolution of this litigation.

17

## C. Typicality

64.    The claims of the named Class Representative are typical of the claims of the Class as a whole. The Class Representative resides within the contaminated Class Area and has suffered property damage caused by the release, deposition and migration of hazardous substances released from Defendants' Eagan Facility.

65.    The claims of the Class Representative and the Class Members arise from the same course of conduct by Defendants – namely, Defendants' failure to properly operate and maintain the Eagan Facility and its operations by releasing and disseminating hazardous substances onto the neighboring properties -- and are based on the same legal theories. There is no conflict between the interests of the Class Representative and the interests of the Class Members.

66.    All Class Members have suffered injury in fact as a result of the contamination of their property by Defendants' release of hazardous fugitive emissions, causing damage to their property.

## D. Adequacy of Representation

67.    The Class Representative will fairly and adequately protect the interests of the Class Members. The Class Representative has retained counsel experienced in complex class action litigation, environmental tort actions, and claims involving toxic exposure. Class Counsel is committed to vigorously prosecute this action on behalf of the Class Members.

68.    The interests of the Class Representative are co-extensive with and not antagonistic to the interests of the Class Members. There are no known conflicts of interest between the Class Representative and the Class they seek to represent.

69.    The Class Representative has the ability and willingness to represent the Class and will devote the necessary time, attention, and resources required to prosecute this action.

18

### E.  Class Treatment is the Superior Method of Adjudication

70.    Common questions of law and fact predominate over any questions affecting only individual Class Members.

71.    A class action is a superior method than other methods for the fair and efficient adjudication of this controversy because:

    a.  Individual litigation of hundreds of separate actions would be impractical and would impose an unreasonable burden on the Court;

    b.  A class action avoids the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants;

    c.  The focus of litigation of these claims in one action will achieve efficiency and promote judicial economy;

    d.  The damage suffered by individual Class Members, while significant, may not individually justify the cost and expense of complex environmental tort litigation;

    e.  As a practical matter, the issues raised in this litigation are unlikely to be fully and finally resolved absent class treatment; and

    f.  The proposed action is manageable.

72.    The Class Representative is not aware of any difficulties that would be encountered in the management of this action as a class action.

### CAUSES OF ACTION

### COUNT I – NEGLIGENCE

73.    Plaintiffs adopts, realleges, and incorporates all preceding paragraphs as though fully set forth herein, and further alleges the following:

19

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM

74.     At all times relevant to this claim, Defendants engaged in the business of recycling lead-acid batteries, also known as secondary lead smelting, in Eagan, Minnesota.

75.     At all times relevant to this claim, Defendants owed Plaintiffs and the Class Members a duty to exercise reasonable care to control, prevent, and/or abate emissions and dissemination of hazardous substances into neighboring properties.

76.     At all times relevant to this claim, Defendants knew, or in the exercise of reasonable care should have known, that lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide dust and fragments from the Eagan Facility could, and would, migrate to the residences of Plaintiffs and Class Members causing property damage.

77.     A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant to that duty; (3) a causal connection between the breach and injury to Plaintiffs; and (4) loss or damage to Plaintiffs.

78.     In breach of the aforementioned duty of care to Plaintiffs and the Class Members, Defendants negligently:

a.  failed to take strict and effective measures to prevent any dissemination or discharge of lead, lead compounds, cadmium, arsenic, and sulfur dioxide from the Eagan Facility into the surrounding community;

b.  failed to make repairs to machinery, equipment and dangerous conditions in a timely and effective manner;

c.  failed to take appropriate precautions and exercise the degree of care necessary to avoid the escape of lead, lead compounds, cadmium, arsenic, and sulfur dioxide from the Eagan Facility;

20

d. failed to implement and supervise the storage, monitoring and disposal of lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide contaminants; and

e. failed to heed the air-monitoring data showing substantial levels of lead, cadmium, arsenic, dioxins and sulfur dioxide in the air exceeding federal limits on a regular basis.

79.    Defendants carelessly and negligently allowed and permitted the dangerous conditions at the Eagan Facility to remain, posing a risk of danger to surrounding communities. Defendants breached their duty by failing to take sufficiently reasonable precautions and measures to prevent the dissemination of lead, lead compounds, cadmium, arsenic, dioxins and sulfur dioxide from the Eagan Facility to surrounding areas including the air, surface and groundwaters, including Plaintiffs' property. Defendants were aware of continuous equipment malfunctions and failed to timely and/or effectively repair equipment.

80.    As a direct, proximate, and foreseeable result of Defendants' negligence, Plaintiffs' property was contaminated by hazardous substances, causing property damage and a persistently hazardous and dangerous condition on Plaintiffs' property.

81.    Also, as a direct and proximate result of Defendant's negligence, Plaintiffs have suffered damages to their properties including, but not limited to, loss of use and enjoyment of property due to contamination of hazardous substances dispersed from the Eagan Facility; diminution of property values; costs of assessing hazardous contamination of the property and water; costs of removal, response, and remediation to abate hazardous conditions; annoyance and inconvenience; other damages to be discovered.

82.    Defendants knowingly allowed hazardous conditions to persist, and failed to take reasonably adequate steps to prevent, control, and/or abate the hazardous contamination causing

21

damage to Plaintiffs' property. Defendants' conduct constitutes a conscious disregard for Plaintiffs' rights.

83.    WHEREFORE, Plaintiffs demand a judgment against Defendants for damages in an amount within jurisdictional limits of the Court, to be determined by a jury, as well as for attorney's fees, costs, interest, and other such relief as this Court deems just and proper.

## COUNT II – MINNESOTA ENVIRONMENTAL RESPONSE AND LIABILITY ACT, MINN. STAT. § 115B.04

84.    Plaintiffs adopt, reallege, and incorporate all preceding paragraphs as though fully set forth herein, and further alleges the following:

85.    Pursuant to Minnesota Environmental Responsibility and Liability Act, Minn. Stat. § 115B.04, any person who is responsible for the release or threatened release of a hazardous substance from a facility is strictly liable, jointly and severally, for the following response costs and damages which result from the release or threatened release or to which the release or threatened release significantly contributes:

a.    All reasonable and necessary removal costs incurred by any person; and

b.    All damages for any injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss.

86.    Under the statute, "'Person' means any individual, partnership, association, public or private corporation or other entity including the United States government, any interstate body, the state and any agency, department or political subdivision of the state." Minn. Stat. § 115B.02 Subd. 12.

87.    Under the statute, "'Hazardous substance' means: … (2) any hazardous air pollutant listed pursuant to the Clean Air Act, under United States Code, title 42, section 7412." Minn. Stat. § 115B.02 Subd. 8.

22

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM

88.     Pursuant to the United States Code 42 USC § 7412, Lead Compounds are expressly listed as "hazardous air pollutants."

89.     Pursuant to the United States Code 42 USC § 7412, Cadmium is expressly listed as "hazardous air pollutants."

90.     Pursuant to the United States Code 42 USC § 7412, Arsenic Compounds are expressly listed as "hazardous air pollutants."

91.     Pursuant to the United States Code 42 USC § 7412, Dioxins are expressly listed as "hazardous air pollutants."

92.     Defendants are persons who operated the Eagan Facility within the meaning of Minn. Stat. § 115B.04.

93.     Through its operation of the Eagan Facility, Defendants released, and continue to release, lead compounds, cadmium compounds, arsenic compounds, and dioxins into the ambient air.

94.     Through their operation of the Eagan Facility, Defendants caused lead and lead compounds, cadmium and cadmium compounds, arsenic and arsenic compounds, and dioxins to enter onto Plaintiffs' property and the properties of Class Members on occasions too numerous to list individually.

95.     Defendants' emissions of lead and lead compounds, cadmium and cadmium compounds, arsenic and arsenic compounds, and dioxins into Plaintiffs' property caused Plaintiffs to suffer substantial response costs and damages as defined in the statute, including the reasonable costs of assessing such injuries, destruction, or loss.

23

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM

96.     As a result of Defendants' emissions of hazardous substances into the properties of Plaintiffs and the Class Members, Defendants are strictly liable, jointly and severally, for such damages.

## COUNT III – STATUTORY NUISANCE

97.     Plaintiffs re-alleges all prior paragraphs of this complaint as if stated herein.

98.     Minn. Stat. § 561.01 provides that "[a]nything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

99.     Plaintiffs and the putative class maintain real property interests in residential property located within the Class Area.

100.    Plaintiffs and the putative class utilized their properties as a residence and reside within the Class Area.

101.    Lead and other toxic substances which entered Plaintiffs' and putative class members' property originated from Defendants' facility, which is located in close proximity.

102.    Lead and other toxic substances which entered Plaintiffs' and putative class members' property from Defendants' facility created an abnormally dangerous condition on Plaintiffs' and putative class members' property that interfered with the use and enjoyment of property.

24

103. By failing to reasonably construct, operate, and or maintain its Facility, Defendants have caused an invasion of Plaintiffs' and putative class members' property by lead and other toxic substances on unusually frequent occasions that are too numerous to list individually herein.

104. The chemicals invading Plaintiffs' and putative class members' property are unreasonably dangerous and offensive to individuals with ordinary health and sensibilities.

105. Defendants' contamination of the air, soil, groundwater, surface water, and sediments on, above, and/or below the property of Plaintiffs and the members of the putative class with lead and other unreasonably dangerous pollutants materially and substantially interferes with the right to freely use and/or comfortably enjoy said residential property.

106. Defendants' conduct caused an interference with Plaintiffs' and putative class members' use and enjoyment of said residential properties.

107. Defendant knew that it was emitting unreasonably dangerous chemicals onto neighboring properties yet failed to take reasonably adequate steps to abate the nuisance and continued spewing dangerous chemicals into the ambient air and into Plaintiffs' and putative class members' properties.

108. Defendants owed, and continues to owe, a duty to Plaintiffs and the putative class to control, prevent, and abate emissions that unreasonably interfere with Plaintiffs' and putative class members' property interests.

109. Defendant breached its duty to Plaintiffs and putative class members to take reasonable measures to prevent, control, and/or abate emissions that cause an abnormally dangerous condition and/or unreasonably interfere with Plaintiffs' and putative class members' right to use and enjoy their properties.

25

110.    As a foreseeable, direct and proximate result of Defendants' conduct, Plaintiffs suffered damages to property as alleged herein.

111.    Such substantial and unreasonable interference, which created an abnormally dangerous condition, includes but is not limited to the following damages:

    a.  Property damages;

    b.  Diminution of property values;

    c.  Loss of use and enjoyment of property due to Defendants' contamination;

    d.  Costs of removal, response, and remediation to abate hazardous conditions;

    e.  Costs of assessing hazardous contamination of the property and water resulting from persistent exposure to hazardous conditions;

    f.  Costs of assessing medical condition of property residents who were persistently exposed to hazardous conditions through the property;

    g.  Mental anguish, annoyance, inconvenience, and discomfort;

    h.  Injunctive relief; and

    i.  Other damages to be discovered or determined fair and just under the circumstances.

112.    Neither Plaintiffs nor putative class members consented to dangerous chemicals entering upon their properties.

113.    Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiffs and the putative class, who have on unusually frequent occasions been exposed to abnormally dangerous conditions, deprived of the full use and enjoyment of their properties, and forced to endure substantial loss in the value of their properties.

114.    Defendants' substantial and unreasonable interferences with Plaintiffs' and putative class members' property rights constitutes a nuisance for which Defendants are liable to Plaintiffs and the putative class for all damages arising from such nuisance, including compensatory, equitable, and/or injunctive relief.

26

Filed in District Court
State of Minnesota
5/15/2026 9:12 PM

115.    WHEREFORE, Plaintiffs demands a judgment against Defendants for damages in an amount within jurisdictional limits of the Court, to be determined by a jury, as well as for attorney's fees, costs, interests, and other such relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues in this Complaint.

Dated: May 15, 2026                              Respectfully submitted,

By:    /s/ Michael J. Fuller, Jr.
          Michael J. Fuller, Jr., MN No. 506920
          **FARRELL & FULLER LAW**
          270 Munoz Rivera Avenue, Suite 201
          San Juan, PR  00918
          Telephone:  939-293-8244
          Facsimile:  939-293-8245
          Email: mike@farrellfuller.com

          Paul J. Napoli (*Pro Hac Vice Pending*)
          **Napoli Shkolnik**
          1302 Avenida Ponce de Leon
          Santurce, PR  00907
          Telephone: (787) 493-5088
          Facsimile: (888) 870-2757
          Email:  pnapoli@nsprlaw.com

          Patrick J. Lanciotti (*Pro Hac Vice Pending*)
          **Napoli Shkolnik**
          400 Broadhollow Road, Suite 305
          Melville, NY  11747
          Telephone: (212) 397-1000
          Facsimile: (888) 870-2757
          Email:  planciotti@napolilaw.com

          *Attorneys for Plaintiffs*